# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2018 Term

_____

No. 18-0280

_____

**FILED**

**November 5, 2018**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**DELBY B. POOL,**
Petitioner

v.

**GREATER HARRISON COUNTY PUBLIC SERVICE DISTRICT,**
Respondent

_____

**Appeal from the Public Service Commission**
**Case No. 17-1168-PSWD-C**

**AFFIRMED**

_____

Submitted: October 10, 2018
Filed: November 5, 2018

**Delby B. Pool**
**Jane Lew, West Virginia**
**Petitioner, Pro se**

**Ancil G. Ramey, Esq.**
**Todd M. Swanson, Esq.**
**Steptoe & Johnson PLLC**
**Huntington, West Virginia**
**Counsel for Respondent Greater**
**Harrison County Public Service District**

**Linda S. Bouvette, Esq.**
**Caryn Watson Short, Esq.**
**Charleston, West Virginia**
**Counsel for Respondent Public Service**
**Commission of West Virginia**

**Timothy P. Stranko, Esq.**
**Charleston, West Virginia**
**Counsel for Amicus Curiae**
**West Virginia Municipal League, Inc.**

**Robert R. Rodecker, Esq.**
**Laura A. Hoffman, Esq.**
**Kay Casto & Chaney PLLC**
**Charleston, West Virginia**
**Counsel for Amicus Curiae**
**West Virginia Rural Water Association**

**JUSTICE ARMSTEAD delivered the Opinion of the Court.**

**JUSTICE LOUGHRY is suspended and did not participate.**

**JUSTICE PAUL T. FARRELL, sitting by temporary assignment.**

**SYLLABUS BY THE COURT**

1.    "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."  Syllabus Point 1, *Appalachian Power Co. v. State Tax Dep't of W.Va.*, 195 W.Va. 573, 466 S.E.2d 424 (1995).

2.    "The detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission*, 166 W.Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate evidence to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper."  Syllabus Point 1, *Central W.Va. Refuse, Inc. v. Pub. Serv. Comm'n of W.Va.*, 190 W.Va. 416, 438 S.E.2d 596 (1993).

3.    "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."  Syllabus Point 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

4.    "A statute is enacted as a whole with a general purpose and intent, and each part should be considered in connection with every other part to produce a harmonious whole.  Words and clauses should be given a meaning which harmonizes with the subject matter and the general purpose of the statute.  The general intention is the key to the whole and the interpretation of the whole controls the interpretation of its parts."  Syllabus Point 1, *State ex rel. Holbert v. Robinson*, 134 W.Va. 524, 59 S.E.2d 884 (1950).

i

5.    "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syllabus Point 3, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

6.    When the Public Service Commission assesses whether a public service district that provides water and sewer utility services has "at least 4,500 customers," as set forth in West Virginia Code §§ 16-13A-9(a)(2) [2018] and 24-2-4a(a) [2015], the Commission may count any one entity receiving combined water and sewer services as two separate customers – that is, the entity may be counted as one customer of the water utility and as one customer of the sewer utility.

Justice Armstead:

In this appeal from the West Virginia Public Service Commission ("the PSC"), we are asked to examine the PSC's statutory jurisdiction over ratemaking by a public service district, jurisdiction that hinges on the number of "customers" served by the district. The PSC has jurisdiction to review rates for water and sewer service charged by small public service districts that have fewer than 4,500 customers. The PSC has no ratemaking jurisdiction over larger public service districts with 4,500 customers or more.

For purposes of determining the PSC's jurisdiction, when a public service district provides combined water and sewer services, the PSC counts the customers receiving those services separately: each entity receiving water service is counted as a water customer, and separately, each entity receiving sewer service is counted as a sewer customer. These customer counts are then combined to determine the total number of customers served by the public service district.

In the instant case, a customer of a public service district challenges this method of calculating the total number of customers. The customer contends that her public service district has fewer than 4,500 customers and that the PSC has jurisdiction to review a rate hike by her district. However, the PSC found it did not have jurisdiction because the public service district provided water and sewer service to more than 4,500 customers. After careful review of the statutes providing the PSC with jurisdiction, we find those statutes support the PSC's method of determining whether a public service district has at least 4,500 customers.

1

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

The respondent, the Greater Harrison County Public Service District ("the District"), operates a water utility and a sewer utility, and provides water and sewer service to customers in Harrison County, West Virginia. In March 2017, the District issued a notice that it intended to increase its sewer rates to pay for certain sewer improvement projects.

Prior to 2015, when any public service district wanted to change the rates it charged for water or sewer service, state law required the public service district to obtain approval from the PSC. In 2015, the Legislature adopted deregulation measures to limit the PSC's jurisdiction and to exempt larger public service districts from this requirement.[1] After 2015, "larger" public service districts are statutorily defined as having at least 4,500 customers and are only required to obtain approval of a rate change from a local elected body, such as a county commission.[2] The Legislature based the 2015 amendments on its

---

[1] We discuss the jurisdictional statutes adopted by the Legislature in 2015 to implement this deregulation process later in this opinion. These statutes have been modified several times since, including in 2018. However, none of these post-2015 modifications appear to affect the outcome of this appeal.

[2] In addition to 4,500 customers, the relevant statutes require a public service district to have gross revenue of $3 million or more to circumvent PSC oversight of rate changes. The parties agree this monetary condition has been met in this case. *See generally*, W.Va. Code § 24-2-4a [2015].

West Virginia Code § 16-13A-9(a)(2)(E) [2018] provides that rate modifications by a larger public service district require approval by the local county commission: "Within 45 days of receipt of the [public service district's] proposed rates,

Continued . . .

finding that larger public service districts are "most fairly and effectively regulated by the local governing body with respect to rates, borrowing and capital projects." W.Va. Code § 24-1-1(j) [2015]. Public service districts with fewer than 4,500 customers are still required to obtain ratemaking approval from the PSC.

The District contends that, legally, it has more than 4,500 customers and does not need PSC approval for ratemaking. It arrives at that conclusion by counting all of the customers who receive service from its water utility and counting all of the customers who receive service from its sewer utility. Customers who receive both water and sewer service are counted twice, once as a water utility customer and again as a sewer utility customer. The District asserts it serves 5,547 customers through its water and sewer utilities. Hence, after announcing its plan to raise its sewer rates, the District published a notice of its intent to hold a public meeting before its local governing body, the Harrison County Commission, regarding its proposed rate increase.

Petitioner Delby B. Pool is a resident of Harrison County who buys water and sewer services for her home from the District. She sought to challenge the District's rate increase and contended that, legally, the District has fewer than 4,500 customers. Hence, Ms. Pool asserted that the county commission did not have jurisdiction and that the District was required to obtain PSC approval for its sewer rate increase. Billing documents obtained by Ms. Pool showed that the District sent bills to three groups of

fees, and charges, the county commission shall take action to approve, modify, or reject the proposed rates, fees, and charges, in its sole discretion."

customers: 1,885 customers who received only water service; 588 who received only sewer service; and 1,537 customers who, like Ms. Pool, received both water and sewer service. Added together, the billing documents indicated that the District had only 4,010 customers.

The Harrison County Commission conducted a public hearing and, on July 12, 2017, approved the rate increase sought by the District.

On August 10, 2017, Ms. Pool filed a complaint with the PSC challenging the District's rate increase.[3] Among several issues raised, Ms. Pool challenged the county commission's authority to approve the rate hike. Ms. Pool specifically asserted that the PSC had jurisdiction, and the county commission lacked jurisdiction, because the District did not have at least 4,500 customers. She argued that because the District had only 4,010 customers, under state law the District should have sought approval for the rate change from the PSC and not the county commission.

The District filed a motion to dismiss Ms. Pool's complaint. The District asserted that it actually has 5,547 customers. The District agreed with Ms. Pool that 1,885 customers received only water service, and that 588 customers received only sewer service. However, the District counted the remaining customers who received combined water and sewer service twice, asserting that 1,537 customers received service from the

---

[3] In addition to filing a complaint with the Public Service Commission, Ms. Pool appealed the county commission's actions to the Circuit Court of Harrison County. The circuit court's rulings are the subject of a separate appeal currently pending before this Court. *See Pool v. Greater Harrison County Public Service District* (No. 18-0434).

4

District's water utility, and another 1,537 customers received service from the District's sewer utility. The District argued that, because it has more than 4,500 water and sewer customers, the PSC did not have jurisdiction over the District's proposed rate increase.

In an order dated March 6, 2018, the PSC agreed with the District and found it did not have jurisdiction over the District's ratemaking and dismissed Ms. Pool's complaint. The PSC determined that the jurisdictional statutes defining the term "customer" are unclear, and concluded that a customer who purchases combined water and sewer services from a public service district must be counted once as a customer of the public service district's "water utility" and counted again as a customer of the "sewer utility." The PSC found that the total number of water utility customers and the total number of sewer utility customers should be added to calculate the total number of customers for the public service district. Here, the PSC found that each of the 1,537 recipients of combined water and sewer services were to be counted as two separate customers, and therefore that the District had 5,547 customers. Thus, because the District provided service to at least 4,500 customers, the PSC concluded that it did not have jurisdiction to examine the District's rate increase.

Ms. Pool now appeals the PSC's March 6, 2018, order finding that the PSC lacked jurisdiction over the District.

# STANDARD OF REVIEW

Ms. Pool's appeal asserts that the PSC has misinterpreted various statutes and rules defining the word "customer." As a general rule, "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syllabus Point 1, *Appalachian Power Co. v. State Tax Dep't of W.Va.*, 195 W.Va. 573, 466 S.E.2d 424 (1995).

This Court summarized its approach to reviewing orders of the PSC as follows:

> The detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission*, 166 W.Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate evidence to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper.

Syllabus Point 1, *Central W.Va. Refuse, Inc. v. Pub. Serv. Comm'n of W.Va.*, 190 W.Va. 416, 438 S.E.2d 596 (1993).

# III.
# ANALYSIS

The parties' arguments center on the meaning of the word "customer." *West Virginia Code* § 24-1-2 [2015] establishes the following definition for the word "customer":

> Whenever used in this chapter, "customer" shall mean and include any person, firm, corporation, municipality, public

service district or any other entity who purchases a product or services of any utility[.]

As part of its statutory authority, the PSC adopted one set of rules that "govern the operation and service of water utilities," 150 C.S.R. § 7.1.1 [2011], and another set of rules that "govern the operation and service of sewer utilities," 150 C.S.R. § 5.1.1 [2011]. Mirroring the Legislature's definition of "customer," these two sets of rules contain identical definitions of the word "customer" and provide, in pertinent part:

"Customer" -- Shall mean and include any such person, firm, corporation, municipality, public service district or any other entity who purchases a product or services of any utility[.]

150 C.S.R. §§ 5.1.7.f [2011] and 7.1.7.e [2011].

In 2015, the Legislature adopted or modified various statutes intended to "deregulate" larger water and sewer utilities owned or operated by public service districts.[4] We examine two of those modified statutes that limit the jurisdiction of the PSC, and remove the PSC's jurisdiction to consider ratemaking decisions by larger public service districts that have "at least" 4,500 customers. As noted above, the Legislature adopted the 4,500 threshold for the reason that larger public service districts are "most fairly and effectively regulated by the local governing body with respect to rates,

---

[4] The extensive, deregulatory legislative changes to the PSC's jurisdiction were contained in Senate Bill 234, a bill "relating to operation and regulation of certain water and sewer utilities owned or operated by political subdivisions of the state." *See 2015 Acts of the Legislature*, ch. 196. A public service district is created as "a public corporation and political subdivision of the state," W.Va. Code § 16-13A-3 [2013], and the district then owns or operates a water and/or sewer utility.

borrowing and capital projects." W.Va. Code § 24-1-1(j) [2015].[5] West Virginia Code §

24-2-4a, as amended in 2015, creates the PSC's jurisdiction to review rate changes by

public utilities, but provides a specific exemption for larger public service districts:

> . . . [N]o public utility subject to this chapter, except for water
> and/or sewer utilities that are political subdivisions of the
> state providing separate or combined services and having at
> least four thousand five hundred customers and annual gross
> revenue of $3 million or more from its separate or combined
> services, shall change, suspend or annul any rate, joint rate,
> charge, rental or classification except after thirty days' notice
> to the commission and the public.

W.Va. Code § 24-2-4a(a) [2015] (Emphasis added).[6] West Virginia Code § 16-13A-

9(a)(2) (which was also amended in 2015) likewise allows larger public service districts

to make rules regarding rate changes without oversight from the PSC:

---

[5] The Legislature also made clear its actions were intended to constrain the PSC's jurisdiction over public service districts, providing: "[T]he jurisdiction of the Public Service Commission over water and sewer utilities that are political subdivisions of the state is limited to that granted specifically in this code." W.Va. Code § 24-1-1(j). *See also* W.Va. Code § 24-2-1(b) [2018] (specifying that the "jurisdiction of the commission over political subdivisions of this state providing separate or combined water and/or sewer services and having at least 4,500 customers . . . is limited to" certain defined powers).

[6] The language exempting larger public service districts – or as the statute provides, "water and/or sewer utilities that are political subdivisions of the state" – was added to the statute in 2015. *See 2015 Acts of the Legislature*, ch. 196. A more general statute defining the PSC's authority to regulate rates, with language also adopted in 2015, also exempts larger public service districts from ratemaking authority by the PSC. West Virginia Code § 24-2-3(a) [2018] provides, in part, that:

> The commission may enforce, originate, establish,
> change, and promulgate tariffs, rates, joint rates, tolls, and
> schedules for all public utilities except for . . . water and/or
> sewer utilities that are political subdivisions of this state

Continued . . .

8

> The board of a public service district *with at least 4,500 customers* and annual combined gross revenue of $3 million or more from its *separate or combined water and sewer services* may make, enact, and enforce all needful rules in connection with the enactment or amendment of rates, fees, and charges of the district.

W.Va. Code § 16-13A-9(a)(2) [2018] (Emphasis added).

The parties' arguments focus on how to count "customers" under those two statutes. Ms. Pool argues that the Legislature's meaning of the word "customer" is simple and clear, and means any person, firm, or corporation that purchases a product or service from a public service district. Applying Ms. Pool's interpretation of the statutes and rules, a person or entity receiving both water and sewer services would be counted as one customer when the PSC is weighing whether it has jurisdiction to examine a public service district's proposed rate changes.

The District and the PSC assert that Ms. Pool's definition of "customer" fails to account for the language actually contained in the two jurisdiction statutes. West Virginia Code § 24-2-4a contains the clause "separate or combined services," while West Virginia Code § 16-13A-9(a)(2) contains the clause "separate or combined water and sewer services." The District contends these "separate or combined" clauses modify the phrase 4,500 customers and indicate the Legislature intended that a customer who

---

> providing a separate or combined services and having at least 4,500 customers and annual combined gross revenues of $3 million or more . . .

None of the parties have raised or argued the effect of this statute in the instant case.

9

purchases combined services from a public service district – water service and sewer service – should count as two separate customers. From the PSC's perspective, the term "separate or combined services" requires each water service connection and sewer service connection to be counted separately to reach a total customer count. The District operates a water utility providing water services, and also operates a sewer utility providing sewer services. By using the disjunctive "or" in "separate or combined services," the respondents argue the Legislature intended that the 4,500-customer threshold could be satisfied by either looking at customers separately "or" through a combination of services.

The PSC similarly asserts Ms. Pool's interpretation of "customer" fails to account for the PSC's *Rules for the Government of Water Utilities* and *Rules for the Government of Sewer Utilities*. The PSC argues that these rules require water and sewer utilities to file separate financial and statistical reports. To ensure that water and sewer utilities are charging fees sufficient to pay for their operating costs, the PSC requires utilities to maintain separate accounting records and bank accounts for their water and sewer operations. Indeed, the PSC maintains that it may consider the rates charged by a utility providing both water and sewer services in two separate ratemaking proceedings, one for water service rates and another for sewer service rates. In their reports, utilities that provide combined water and sewer services are required to count an entity receiving

10

both water and sewer services as two customers. The PSC asserts we should support its interpretation of the definition of "customer."[7]

Fundamental principles of statutory construction lead us to accept the interpretation of W.Va. Code § 16-13A-9(a)(2) and W.Va. Code § 24-2-4a as proffered by the District and the PSC. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus Point 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Our rules of statutory construction require us to give meaning to all provisions in a statutory scheme, if at all possible.

> A statute is enacted as a whole with a general purpose and intent, and each part should be considered in connection with every other part to produce a harmonious whole. Words and clauses should be given a meaning which harmonizes with the subject matter and the general purpose of the statute. The general intention is the key to the whole and the

---

[7] When a government agency makes an official interpretation of a statute, usually through the rulemaking process, this Court will defer to the agency's reading unless it is clearly wrong. *See* Syllabus Point 4, *Sec. Nat'l Bank & Tr. Co. v. First W.Va. Bancorp., Inc.*, 166 W.Va. 775, 277 S.E.2d 613 (1981) ("Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous."). *See generally*, *Appalachian Power Co. v. State Tax Dep't of W.Va.*, 195 W.Va. 573, 582, 466 S.E.2d 424, 433 (1995) (discussing judicial review of and deference an agency's construction of a statute through rulemaking). This Court's policy of deference does not, however, "extend to *ad hoc* representations on behalf of an agency, such as litigation arguments." *Petition of Snuffer*, 193 W.Va. 412, 417, 456 S.E.2d 493, 498 (1995) (Cleckley, J., concurring) (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213, 109 S.Ct. 468, 474, 102 L.Ed.2d 493, 503 (1988)). *See also*, *W.Va. Health Care Cost Review Auth. v. Boone Mem'l Hosp.*, 196 W.Va. 326, 334, 472 S.E.2d 411, 419 (1996) ("[C]ourts customarily withhold . . . deference from agencies litigating positions.").

11

interpretation of the whole controls the interpretation of its parts.

Syllabus Point 1, *State ex rel. Holbert v. Robinson*, 134 W.Va. 524, 59 S.E.2d 884 (1950). *See also*, Syllabus Point 2, *Smith*, 159 W.Va. at 108, 219 S.E.2d at 361 ("In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation.").

Furthermore, "[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syllabus Point 3, *Smith*, 159 W.Va. at 108, 219 S.E.2d at 361. "It is always presumed that the legislature will not enact a meaningless or useless statute." Syllabus Point 4, *State ex rel. Hardesty v. Aracoma-Chief Logan No. 4523, Veterans of Foreign Wars*, 147 W.Va. 645, 129 S.E.2d 921 (1963).

The Legislature plainly intended to limit the PSC's jurisdiction when it adopted West Virginia Code §§ 16-13A-9(a)(2) and 24-2-4a. When the Legislature modified those statutes in 2015, it perceived that the water and sewer rates charged by larger public service districts are best regulated by local elected officials and not the PSC. *See* W.Va. Code § 24-1-1(j). These statutes limited the PSC to regulating only the rates charged by smaller public service districts.

Moreover, we conclude that the Legislature intended the phrase "separate or combined" in West Virginia Code §§ 16-13A-9(a)(2) and 24-2-4a to modify the means by which the PSC measures whether a public service district has 4,500 customers. These statutes indicate that if a public service district provides combined utility services – in

12

this case, water and sewer – the PSC may count each individual or business receiving each service separately. In this case, the District is a water utility providing water services to customers and, separately, is a sewer utility providing sewer services to customers.

We therefore hold that, when the Public Service Commission assesses whether a public service district that provides water and sewer utility services has "at least 4,500 customers," as set forth in West Virginia Code §§ 16-13A-9(a)(2) [2018] and 24-2-4a(a) [2015], the Commission may count any one entity receiving combined water and sewer services as two separate customers – that is, the entity may be counted as one customer of the water utility and as one customer of the sewer utility

The PSC properly applied West Virginia Code §§ 16-3A-9(a)(2) and 24-2-4a, and correctly concluded that each customer of the District's water utility services should be counted as one customer of the water utility, and that each customer of the District's sewer utility services should be counted as one customer of the sewer utility. The total number of water utility and sewer utility customers were then added to calculate the total number of customers for the District. Applying this process, the District had in excess of 4,500 customers, and thus was not subject to the PSC's jurisdiction with regard to ratemaking authority.

## IV.
## CONCLUSION

Because the District has more than 4,500 customers, the PSC did not have jurisdiction to consider Ms. Pool's complaint. The PSC's March 6, 2018, order finding that it did not have jurisdiction and dismissing Ms. Pool's complaint is therefore affirmed.

Affirmed.