IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2022 Term

**FILED**

**November 10, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-0351

MASON COUNTY PUBLIC SERVICE DISTRICT,
Petitioner,

v.

THE PUBLIC SERVICE COMMISSION OF WEST VIRGINIA and
RALPH and CARLA HUFF,
Respondents.

Appeal from the Public Service Commission of West Virginia
Case No. 21-0730-LRR-C

AFFIRMED

Submitted: October 5, 2022
Filed: November 10, 2022

James V. Kelsh, Esq.
William M. Lorensen, Esq.
Bowles Rice LLP
Charleston, West Virginia
Counsel for the Petitioner

Robert R. Rodecker, Esq.
John R. McGhee, Esq.
Cynthia L. Wilson, Esq.
Kay Casto & Chaney PLLC
Charleston, West Virginia
Counsel for the Amicus Curiae
West Virginia Rural Water Association

Jeffrey A. Foster, Esq.
Jessica M. Lane, Esq.
Public Service Commission of
West Virginia
Charleston, West Virginia
Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

CHIEF JUSTICE HUTCHISON dissents and may write separately.

JUSTICE WOOTON dissents and may write separately.

SYLLABUS BY THE COURT

1.      "The detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission*, 166 W. Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate evidence to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper."  Syllabus Point 1, *Cent. W. Va. Refuse, Inc. v. Pub. Serv. Comm'n of W. Va.*, 190 W. Va. 416, 438 S.E.2d 596 (1993).

2.      "'Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review.'  Syllabus Point 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995)."  Syllabus Point 1, *Pool v. Greater Harrison Cnty. Pub. Serv. Dist.*, 241 W. Va. 233, 821 S.E.2d 14 (2018).

3.      "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."  Syllabus Point 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951).

4.      "The Public Service Commission was created by the Legislature for the purpose of exercising regulatory authority over public utilities.  Its function is to require such entities to perform in a manner designed to safeguard the interests of the public and

the utilities. Its primary purpose is to serve the interests of the public. *Boggs v. Public Service Commission*, 154 W. Va. 146, 174 S.E.2d 331 (1970)." Syllabus Point 1, *W. Va.- Citizen Action Grp. v. Pub. Serv. Comm'n*, 175 W. Va. 39, 330 S.E.2d 849 (1985).

WALKER, Justice:

While investigating a complaint about residential water service that was disconnected for nonpayment, staff at the West Virginia Public Service Commission noticed that the Mason County Public Service District charged a $50 water disconnect fee in addition to a $50 reconnect fee when it computed arrearages. The Commission then invalidated the disconnect fee as an unreasonable practice even though the complaint made no mention of the fee.

The District appeals the Commission's order and argues that it exceeded its statutory jurisdiction by getting into fees because the Mason County Commission has the authority to establish the District's water rates, fees and charges. It also contends that the Commission erred by finding that the disconnect fee was unreasonable because it is used to cover a portion of the costs associated with disconnecting service.[1] We find that the Commission acted within its authority to investigate and ultimately invalidate the disconnect fee, and the substantive result of its order is consistent with the Commission's precedent and rules. So, we affirm the order.

---

[1] We wish to acknowledge and thank the amicus curiae West Virginia Rural Water Association for its brief in support of the District.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Mason County Public Service District is a large public service district that meets the definition of a Locally Rate Regulated Utility (LRR).[2] The District provides water and sewage services to customers throughout Mason County. In March of 2021, the District's Board and the Mason County Commission approved new water rates. The District's tariff includes a $50 disconnect fee and a $50 reconnect fee, and the District assesses both if it terminates and then reconnects water service for nonpayment.

In March of 2021, the District disconnected Ralph and Carla Huff's water service for nonpayment. In October of 2021, the Huffs filed a formal complaint with the Commission against the District seeking to have their water service restored. The Huffs stated that the District shut off their water service for an entire summer during the COVID-19 pandemic. They complained that the District required them to pay their arrearages in full before it would restore their service. The Huffs' involvement in this case was limited to the filing of the initial complaint. They did not appear at the administrative hearing and made no appearance before this Court.

---

[2] *See* W. Va. Code § 16-13A-9(a)(2) (2021) ("The board of a public service district with at least 4,500 customers and annual combined gross revenue of $3 million providing water or sewer service separately or in combination may make, enact, and enforce all needful rules in connection with the enactment or amendment of rates, fees, and charges of the district. . . .").

The Commission referred the Huffs' complaint to an Administrative Law Judge. Meanwhile, the Commission's staff filed an Interim Relief Memorandum on October 8, 2021, recommending that relief be granted. Although the Huffs did not raise the issue in their complaint, the Commission's staff expressed concern regarding the reasonableness of the District's practice of requiring the Huffs to pay both a disconnect and a reconnect fee before it restored service. That same day, the Commission granted interim relief.

In November of 2021, the District filed a motion to dismiss the complaint, claiming that it had complied with the Commission's memorandum by restoring service to the Huffs and entering into a deferred payment agreement with them.[3] The District stated that it applied the disconnect fee, part of its tariff, in a nondiscriminatory manner. It also argued that the Huffs missed the thirty-day time period for a customer to challenge rates.[4] In response, the Commission objected to the motion to dismiss, again noting its concerns with the practice of charging a disconnect fee and reconnect fee. The Commission argued that the thirty-day time period for a customer to challenge rates did not limit its investigation into that issue.

---

[3] It is unnecessary to discuss the details of the deferred payment agreement offered to the Huffs. The only facts relevant to this appeal involve the District's disconnect fee.

[4] *See* W. Va. Code § 24-2-1(b)(6) and (7) (2022).

3

In December of 2021, the Commission filed its Final Staff Memorandum. Among other things, it recommended that the District credit back to the Huffs' account the $50 disconnect fee. The District filed an objection, stating that the disconnect fee should not be waived.

The matter was heard by an Administrative Law Judge on December 30, 2021. The Huffs did not appear, and the District moved to dismiss based on their failure to prosecute the claim. The Commission objected, arguing that it had the authority to proceed with the hearing on the issue of whether the disconnect fee was an unreasonable practice. The ALJ denied the motion to dismiss, and the hearing proceeded.

The District and the Commission offered evidence regarding the disconnect fee. Brent Clark, the District's General Manager, testified that the disconnect fee was approved by the District's Board and the Mason County Commission. He said that the fee was necessary to cover the travel costs; on average, the District incurred expenses of $116 for each disconnect or reconnect performed, and the fees diminish the extent to which the District's regular customers subsidize those who fail to make timely payments. On the other hand, Robert Cadle, a utility analyst with the Commission, testified that it was unreasonable for the district to charge both a disconnect and reconnect fee, because the practice could lead to double-recovery. He said that the Commission's water rules provide

4

only for a reconnect fee[5] and that utilities include the cost of disconnects for water service in their operation and management costs. In a recommended decision rendered on January 28, 2022, the ALJ found that the disconnect fee was an unreasonable practice under Commission precedent and rules. The District filed exceptions to the recommended decision.

Following a review of the case, the Commission adopted the ALJ's recommended decision. The Commission found that it had jurisdiction to proceed over the matter under West Virginia Code §§ 24-2-1(b)(2)(2022) and 24-2-7(a) (2018), which provide authority for it to regulate the District's measurements, practices, acts or services. The Commission also found that the thirty-day time limit for customers to file a complaint did not serve as a basis to dismiss the matter because it had the authority to investigate an alleged or unreasonable act or practice under West Virginia Code § 24-2-7(a), which had no statutory time limitation. Likewise, the Commission found that the matter concerning the disconnect fee did not require dismissal for the Huffs' failure to prosecute. The Commission noted that the issue of the reasonableness of the disconnect fee was not factually dependent on the Huffs' testimony or evidence.

---

[5] *See* W. Va. Code R. § 150-7-6.8.3.a (2021) ("Whenever the supply of water is turned off for violation of rules, non-payment of bills, or fraudulent use of water, the utility may make a charge as set forth in its tariff for reestablishment of service.").

5

Regarding the reasonableness of the disconnect fee, the Commission noted that disconnect fees have historically been looked upon with disfavor and denied when requested by utilities. And while the Commission's water rules allow for a reconnect fee, they do not allow for a disconnect fee. Relying on its precedent, the Commission noted its historical stance that disconnect fees amount to a double-recovery because the expenses associated with disconnecting services are part of a public utility's operation and maintenance expenses. So, the Commission found that the disconnect fee was an unreasonable practice and it invalidated the disconnect fee. The District appealed the Commission's April 4, 2022, final order to this Court.

## II. STANDARD OF REVIEW

We give deference to orders of the Commission, recognizing that most cases involve complex issues that fall within its special expertise of public utility regulation.[6] To that end, we have applied a three-part standard of review:

> The detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission*, 166 W. Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate evidence

---

[6] *W. Va. Action Grp. v. Pub. Serv. Comm'n of W. Va.*, 233 W. Va. 327, 331-32, 758 S.E.2d 254, 258-59 (2014).

6

to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper.[7]

In this appeal, we are asked to consider whether the Commission exceeded its statutory jurisdiction. "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."[8]

## III. ANALYSIS

West Virginia Code § 24-2-1(a) (2022) extends the jurisdiction of the Commission "to all public utilities in this state[.]" This jurisdiction includes "[a]ny public service district created under the provisions of § 16-13A-1 et seq. of this code[.]"[9] But that jurisdiction is not without limits; the Commission's jurisdiction over LRR public service districts "is limited to those powers enumerated in § 24-2-1(b)[.]"[10]

In 2015, the Legislature stated that LRR public service districts "are most fairly and effectively regulated by the local governing body with respect to rates, borrowing

---

[7] Syl. Pt. 1, *Cent. W. Va. Refuse, Inc. v. Pub. Serv. Comm'n of W. Va.*, 190 W. Va. 416, 438 S.E.2d 596 (1993).

[8] Syl. Pt. 1, *Pool v. Greater Harrison Cnty. Pub. Serv. Dist.*, 241 W. Va. 233, 821 S.E.2d 14 (2018) (quoting Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995)).

[9] W. Va. Code § 24-2-1(a)(9).

[10] *Id.* at § 24-2-2(c) (2018).

and capital projects."[11]  It transferred the authority to set rates, fees and charges for those public service districts from the Commission to the county commission that created them.[12]

In this appeal, the District claims that the Commission "hijacked" an ordinary customer complaint case to try to reclaim jurisdiction over fees that the Legislature had transferred to county commissions.  The Commission denies that allegation and claims that it properly exercised jurisdiction over the District's practice of charging a disconnect fee. The parties also dispute whether the Commission erred in invalidating the disconnect fee as an unreasonable practice under West Virginia Code § 24-2-7(a).  We address these issues below.

## A.  The Commission Acted Within its Statutory Jurisdiction

The District first argues that the Commission could not entertain a challenge to the disconnect fee that its county commission approved because the Huffs failed to file their complaint within the 30-day jurisdictional time limit of West Virginia Code § 24-2-1(b)(7), failed to appear at the administrative hearing, and failed to raise any issue related to the fee.  The District maintains that the Commission's complaint resolution jurisdiction under West Virginia Code § 24-2-1(b)(7) has temporal limits in that "any formal complaint filed under this section that is based on the act or omission of the political subdivision shall

---

[11] *Id*. at § 24-1-1(j) (2015).

[12] *Id*. at § 16-13A-9(a)(2) (2021).

8

be filed within 30 days of the act or omission complained of[.]" The District states that the Huffs failed to file their complaint either within 30 days of the Mason County Commission's approval of the District's tariff that set the $50 disconnect fee, or within 30 days of the District's termination of their water service.

The Commission responds that its jurisdiction over LLR public service districts includes "[r]egulation of measurements, practices, acts, or services, as granted and described in § 24-2-7[,]"[13] so it retains broad jurisdictional authority to investigate the District's practice of charging a disconnect fee—outside the parameters of the Huffs' complaint—and this authority has no statutory time limits.

The District is concerned that the Commission believes its jurisdiction under West Virginia § 24-2-1(b)(2) includes the authority to reject rates, fees and charges that were duly adopted by a county commission, and that its ability to do so has no temporal limitation. The District maintains that the water service disconnect fee at issue is not an unreasonable practice, but a fee. It argues that the Commission overstepped its bounds and that its order invalidating the disconnect fee effectively overrides West Virginia § 16-13A-9(a)(2), which authorizes LRR public service districts and their county commissions to enact their own rates, fees and charges.

---

[13] *Id*. at § 24-2-1(b)(2).

9

Our analysis of this issue is dispositively guided by the well-established principle that "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."[14]  West Virginia Code § 24-2-1(b)(2) provides that the jurisdiction of the Commission over the LRR public service districts includes the "[r]egulation of measurements, practices, acts, or services, as granted and described in § 24-2-7 of this code[.]"  And West Virginia Code § 24-2-7(a) provides:

> Whenever, under the provisions of this chapter, the commission shall find any regulations, measurements, practices, acts or service to be unjust, unreasonable, insufficient or unjustly discriminatory, or otherwise in violation of any provisions of this chapter, or shall find that any service is inadequate, or that any service which is demanded cannot be reasonably obtained, the commission shall determine and declare, and by order fix reasonable measurement, regulations, acts, practices or services, to be furnished, imposed, observed and followed in the state in lieu of those found to be unjust, unreasonable, insufficient, or unjustly discriminatory, inadequate or otherwise in violation of this chapter, and shall make such other order respecting the same as shall be just and reasonable.

This statute clearly and unambiguously gives the Commission the authority to examine the District's practice of charging a water disconnect fee, determine the reasonableness of that practice, and invalidate the practice when unreasonable.  And we agree with the

---

[14] Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951).

Commission that it scrutinized the practice of charging the disconnect fee (in addition to the reconnect fee), not the amount of the fee.

While the Commission lacked the statutory authority to enact rates, fees, and charges of the District in the first instance,[15] it was authorized by West Virginia Code § 24-2-1(b)(2) to investigate and ultimately invalidate the District's practice of charging a disconnect fee under West Virginia Code § 24-2-7(a) "[w]henever" it found that practice to be unreasonable. So, the Commission had the statutory authority to conduct this investigation outside the parameters of the Huffs' complaint, and it operated under no statutory time limitation.[16]

## B. The Commission's Order is Consistent with its Precedent and Rules

The District next argues that the Commission erred in determining that the disconnect fee was an unreasonable practice. It claims that the disconnect fee was entirely reasonable because it was applied in a nondiscriminatory fashion, was cost-based, and only recouped a fraction of the actual costs incurred by the District when disconnecting a delinquent customer's service. The District contends that the Commission's blanket policy

---

[15] W. Va. Code § 16-13A-9(a)(2).

[16] For these reasons, we find no merit to the District's argument that the Commission erred by declining to dismiss the Huffs' complaint as untimely under West Virginia Code § 24-2-1(b)(7), and for their failure to appear at the administrative hearing under the Commission's Procedural Rules.

11

of prohibiting a disconnect fee was unreasonable because the fee diminishes the extent to which the District's regular paying customers subsidize delinquent customers. The District states that the Commission's water rule[17]—that does not specifically authorize the charging of a disconnect fee—is at odds with West Virginia § 16-13A-9(a)(2), where the Legislature gave the home county commission of the LRR public service district plenary authority to set rates, fees, and charges.

The Commission responds that the District's status as an LRR does not constitute a free pass for it to skirt the application of the Commission's precedent and rules and implement its own unreasonable practices. The Commission reiterates that its rules allow only for a reconnect fee. And the Commission historically has found that disconnect fees amount to a double-recovery because the expenses claimed here by the District should be part of its operation and maintenance expenses which are recoverable in base rates. So, the Commission contends that the application of a disconnect fee and a reconnect fee is an impermissible double-recovery by the District that rises to the level of an unreasonable practice.

We find that the Commission presents the better argument. West Virginia Code § 24-2-1(a) directs in the clearest terms that the Commission is the agency vested with power and jurisdiction to supervise the business of every public utility in this State.

---

[17] *See* note 5, above.

12

It is empowered to assure that public utility measurements, practices, acts, and services are just and reasonable and that service is adequate.[18]  As noted in Part II of this opinion, the decisions of this Court establish that we afford deference to policy determinations that fall within the Commission's jurisdiction and special expertise.  The Commission clearly possesses the authority to determine whether the practice of charging a disconnect fee was reasonable and in the public interest.  This determination is not made in a vacuum; rather, the Commission is guided by its precedent and rules as they establish uniformity for public utilities.

We have often said that the Legislature created the Commission to exercise its statutory powers over public utilities to safeguard the interests of the public:

> The Public Service Commission was created by the Legislature for the purpose of exercising regulatory authority over public utilities. Its function is to require such entities to perform in a manner designed to safeguard the interests of the public and the utilities. Its primary purpose is to serve the interests of the public. *Boggs v. Public Service Commission*, 154 W.Va. 146, 174 S.E.2d 331 (1970).[19]

It is important to bear in mind the statutory scheme by which the Legislature delegated plenary regulatory authority over public utilities to the Commission, and the judiciary's limited role in reviewing the Commission's exercise of that authority.  As

---

[18] W. Va. Code § 24-2-7(a).

[19] Syl. Pt. 1, *W. Va.-Citizen Action Grp. v. Pub. Serv. Comm'n*, 175 W. Va. 39, 330 S.E.2d 849 (1985).

explained above, the Commission is statutorily authorized to investigate and fix the unreasonable practices of a public utility, and the Legislature has recognized that the exercise of that power will sometimes "affect rates, fees, and charges fixed by the political subdivision[.]"[20] So we reject the notion that LRR public service districts are not bound by the Commission's practice standards simply because they set their rates, fees and charges in the first instance. The jurisprudence in this State, "and around the nation, has recognized the wide discretion accorded public service commissions as quasi-legislative bodies[.]"[21]

In this case, the Commission did no more than apply its established precedent and rules when it invalidated the District's practice of assessing a water disconnect fee. We see no basis to second-guess the Commission's methods because "the rulings, interpretations and opinions" of the Commission "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."[22]

---

[20] W. Va. Code § 24-2-1(b)(7).

[21] *Entergy Gulf States, Inc. v. La. Pub. Serv. Comm'n*, 730 So. 2d 890, 917 (La. 1999); *see also Boise Water Corp. v. Idaho Pub. Utilities Comm'n*, 555 P.2d 163, 169 (Idaho 1976) (stating public service commission is a fact finding, quasi-legislative body authorized to investigate and determine issues pertaining to the regulation of public utilities).

[22] *Sierra Club v. Pub. Serv. Comm'n of W. Va.*, 241 W. Va. 600, 613, 827 S.E.2d 224, 237 (2019) (quoting *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 583, 466 S.E.2d 424, 434 (1995) (citations omitted)).

Based on the record before us, we do not find that the substantive result of its order is improper.

## IV.  CONCLUSION

For the reasons set out above, we affirm the Commission's order.

Affirmed.

15