**FILED**

**November 10, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-0351 – *Mason County Public Service District v. The Public Service Commission of West Virginia and Ralph and Carla Huff*

WOOTON, Justice, dissenting, joined by Chief Justice Hutchison:

The complainants, Ralph and Carla Huff, had their water service terminated due to nonpayment and later sought to have that service reconnected. The petitioner, Mason County Public Service District ("the District), charged the Huffs separate fees for disconnection of water service ($50.00) and then for reconnection ($50.00). The Huffs complained to the respondent, The Public Service Commission ("PSC"), that they were required to pay the arrearage they owed before the District would restore their water service, raising no specific complaint as to either the disconnect fee or the reconnect fee. Nonetheless, the PSC exercised jurisdiction over the fee issue, determining that the disconnect fee was not really a fee, but "*the practice*" of charging a disconnect fee. The PSC determined that the District's "practice" of charging a disconnect fee was an "unreasonable practice" under the PSC's jurisdictional authority as set forth in West Virginia Code section 24-2-7(a) (2018).[1] *See also* W. Va. Code § 24-2-1(b)(2) & (7) (Supp.

---

[1] West Virginia Code § 24-2-7(a) provides:

> (a) Whenever, under the provisions of this chapter, the commission shall find any regulations, measurements, practices, acts or service to be unjust, unreasonable, insufficient or unjustly discriminatory, or otherwise in violation of any provisions of this chapter, or shall find that any

1

2022).[2]  The majority affirms the PSC's exercise of jurisdiction in this case and, in so doing, disregards the Legislature's 2015 transfer of the authority to set rates, fees and

service is inadequate, or that any service which is demanded cannot be reasonably obtained, the commission shall determine and declare, and by order fix reasonable measurement, regulations, acts, practices or services, to be furnished, imposed, observed and followed in the state in lieu of those found to be unjust, unreasonable, insufficient, or unjustly discriminatory, inadequate or otherwise in violation of this chapter, and shall make such other order respecting the same as shall be just and reasonable.

[2] West Virginia Code section 24-2-1(b)(2) & (7) provides:

(b) The jurisdiction of the commission over political subdivisions of this state providing separate or combined water and/or sewer services and having at least 4,500 customers and annual combined gross revenues of $3 million or more that are political subdivisions of the state is limited to:

. . . .

(2) Regulation of measurements, practices, acts, or services, as granted and described in § 24-2-7 of this code;

. . . .

(7) Customers of water and sewer utilities operated by a political subdivision of the state may bring formal or informal complaints regarding the commission's exercise of the powers enumerated in this section and the commission shall resolve these complaints: Provided, That any formal complaint filed under this section that is based on the act or omission of the political subdivision shall be filed within 30 days of the act or omission complained of and the commission shall resolve the complaint within 180 days of filing. The 180-day period for resolution of the dispute may be tolled by the commission until the necessary information showing the basis of the matter complained of is filed by the political subdivision: Provided, however, That whenever the commission finds any regulations,

charges for a Locally Rate Regulated Public Service District ("LLR"), which includes the District, from the PSC to the county commission which created the PSD. *See* W. Va. Code § 16-13A-9(a)(2)(E) (2021).[3]  Therefore, I respectfully dissent.

---

measurements, practices, acts, or service to be unjust, unreasonable, insufficient, or unjustly discriminatory, or otherwise in violation of any provisions of this chapter, or finds that any service is inadequate, or that any service which is demanded cannot be reasonably obtained, the commission shall determine and declare, and by order fix reasonable measurement, regulations, acts, practices, or services, to be furnished, imposed, observed, and followed in lieu of those found to be unjust, unreasonable, insufficient, or unjustly discriminatory, inadequate, or otherwise in violation of this chapter, and shall make such other order respecting the same as shall be just and reasonable: Provided further, That if the matter complained of would affect rates, fees, and charges so fixed by the political subdivision providing separate or combined water and/or sewer services, the rates, fees, or charges shall remain in full force and effect until set aside, altered, or amended by the commission in an order to be followed in the future.

[3] West Virginia Code section 16-13A-9(a)(2)(E) provides:

(2) The board of a public service district with at least 4,500 customers and annual combined gross revenue of $3 million providing water or sewer service separately or in combination may make, enact, and enforce all needful rules in connection with the enactment or amendment of rates, fees, and charges of the district. At a minimum, these rules shall provide for:

. . . .

(E) Rates, fees, and charges approved by resolution of the board shall be forwarded in writing to the county commission with the authority to appoint the members of the board. The county commission shall publish notice of the proposed revised rates, fees, and charges by a Class I legal

This Court recognized the transfer of the authority to set rates, fees and charges from the PSC to the District, an LLR, in *Pool v. Greater Harrison County Public Service District*, 241 W. Va. 233, 821 S.E.2d 14 (2018), as follows:

> Prior to 2015, when any public service district wanted to change the rates it charged for water or sewer service, state law required the public service district to obtain approval from the PSC. In 2015, the Legislature adopted deregulation measures *to limit the PSC's jurisdiction and to exempt larger public service districts from this requirement.* After 2015, "larger" public service districts are statutorily defined as having at least 4,500 customers and are only required to obtain approval of a rate change from a local elected body, such as a county commission. The Legislature based the 2015 amendments on its finding that larger public service districts are *"most fairly and effectively regulated by the local governing body with respect to rates, borrowing and capital projects."* W.Va. Code § 24-1-1(j) [2015].

241 W. Va. at 236, 821 S.E.2d at 17 (emphasis added and footnotes omitted). We also stated in *Pool* that

> [t]he Legislature plainly intended to limit the PSC's jurisdiction when it adopted West Virginia Code §§ 16-13A-

---

advertisement in compliance with the provisions of § 59-3-1 et seq. of this code. Within 45 days of receipt of the proposed rates, fees, and charges, the county commission shall take action to approve, modify, or reject the proposed rates, fees, and charges, in its sole discretion. If, after 45 days, the county commission has not taken final action to approve, modify, or reject the proposed rates, fees, and charges, as presented to the county commission, shall be effective with no further action by the board or county commission. In any event, this 45-day period shall be mandatory unless extended by the official action of both the board proposing the rates, fees, and charges, and the appointing county commission.

9(a)(2) and 24-2-4a. When the Legislature modified those statutes in 2015, *it perceived that the water and sewer rates charged by larger public service districts are best regulated by local elected officials and not the PSC. See* W.Va. Code § 24-1-1(j). These statutes limited the PSC to regulating only the rates charged by smaller public service districts.

241 W. Va. at 240, 821 S.E.2d at 21 (emphasis added).

Notwithstanding this Court's acknowledgment of the District's jurisdiction to fix its rates and fees it charges and the Legislature's action in limiting the jurisdiction of the PSC in this regard, in the instant case the majority simply disregards the legislative grant of authority to the District. Critically, West Virginia Code section 16-13A-9 expressly allows the District to establish fees in accordance with the provisions of West Virginia Code sections 16-13A-1 to -25 (2021), entitled "Public Service Districts," as follows:

> (a)(1) The board may make, enact, and enforce all needful rules in connection with the acquisition, construction, improvement, extension, management, maintenance, operation, care, protection, and the use of any public service properties owned or controlled by the district. *The board shall establish, in accordance with this article, rates, fees, and charges for the services and facilities it furnishes*, which shall be sufficient at all times, notwithstanding the provisions of any other law or laws, *to pay the cost of maintenance, operation, and depreciation of the public service properties and principal of and interest on all bonds issued, other obligations incurred under the provisions of this article*, and all reserve or other payments provided for in the proceedings which authorized the issuance of any bonds under this article. The schedule of the rates, fees, and charges may be based upon:

. . . .

> (E) *Any other basis or classification which the board may determine to be fair and reasonable, taking into consideration the location of the premises served and the nature and extent of the services and facilities furnished.*

*Id*. § 16-13A-9(a)(1)(E) (emphasis added). Accordingly, the District did exactly that which the Legislature commanded: it adopted and approved charges for the services and facilities it furnishes to "pay for the cost of maintenance, operation, and depreciation" of its "properties and principal of and interest on all bonds issued, other obligations incurred under the provisions of this article, and all reserve or other payments provided for in the proceedings which authorized the issuance of any bonds under this article." *Id*. The District represented that it

> is the largest physical public service district ("PSD") in the state – with 519 miles of main, serving all of the unincorporated areas of Mason County and reaching into three other counties. The average round trip from the District's home base to terminate water service is 60 miles and takes two hours of personnel time. On average, the District incurs expenses of $116.10 per disconnection or reconnection performed. The disconnect and reconnect fees do not fully recover the District's expenses in performing these services; however, these fees diminish the extent to which the District's regular paying customers subsidize those who fail to make arrangements to continue service.

(Internal citations to appendix record omitted).

Despite the District's express grant of statutory authority to establish its rates and fees using a cost-based approach, the PSC undertook its own investigation into whether

6

the disconnect and reconnect fees charged in this case were reasonable. The PSC based its exercise of its jurisdiction on its conclusion that the "disconnect fee" was not actually a fee but a "practice of charging the fee." W. Va. Code § 24-2-1(b)(2) & (7) and § 24-2-7(a); *see supra* notes 1 & 2.

In support of its position, the PSC first relied upon its Rules for the Government of Water Utilities, W. Va. Code R. §§ 150-7-1 to -11.7.6 (2021) ("Water Rules"). The PSC argued that under the Water Rules, customers can only be charged reconnect fees, not disconnect fees. *See id*. § 150-7-6.8.3.a (effective September 14, 2021).[4] The PSC also argues that historically it has disfavored disconnect fees and denied requests by utilities to charge such fees because "disconnect fees amount to a double-recovery

---

[4] West Virginia Code of State Rules section 150-1-6.8.3.a allows for a charge for reconnection of water supply as follows: "Whenever the supply of water is turned off for violation of rules, non-payment of bills, or fraudulent use of water, *the utility may make a charge as set forth in its tariff for reestablishment of service*." *Id*. (emphasis added). However, neither party mentioned nor argued the fact that the Water Rules also provide for a "disconnect fee" under the express subsection heading "Utility discontinuance of service" as follows:

> 6.8.2. Once a disconnected customer has paid his delinquency in full, or the utility has agreed to enter into a deferred payment agreement with the customer, and all disconnect and/or reconnect fees have been paid, the utility shall reconnect the customer's water service as soon as possible but no later than twenty-four (24) hours from the time the customer pays all disconnect and reconnect fees.

*Id*. (emphasis added). Moreover, a review of the Water Rules reveals no clearly expressed "disapproval" of disconnect fees.

because expenses associated with disconnecting services are part of it operation and maintenance expenses for which the Commission or the county commission allows recovery when establishing service rates." *See Jane Lew Pub. Serv. Dist.*, Case No. 08-1867-PWD-T-PC-CN, at p.15 (Recommended Decision entered Mar. 13, 2009) ("It is reasonable to deny the inclusion of a disconnection fee in Jane Lew's tariff since it is current Commission policy to only allow a disconnection fee when a water utility is termination water service for a delinquent sewer bill under contract with a sewer utility.") and *Fountain Pub. Serv. Dist.*, Case No. 09-0443-PWD-T-PW, at 2 (Recommended Decision entered Sept. 8, 2009) ("Allowing a water utility to impose a disconnect fee may ostensibly result in double recovery by the utility, since normally this cost of service item is recouped in a utility's base rates.").

Despite the PSC's claim that its Water Rules only allow fees for reconnecting service, not disconnecting it, and its pronouncement that disconnect fees are disfavored,[5]

---

[5] Interestingly, neither party mentions the order entered in *Mason County Public Service District and Point Pleasant Water Works*, Case No. 08-1831-PSD-W-PC-T (Commission Order entered January 28, 2009), wherein the Commission, discussing certain fees including disconnect, reconnect, and administrative, explains that

> *[r]egarding approval of the fees, it is established Commission policy to permit utilities*, with the exception of motor carrier utilities, *to institute a charge for disconnecting and reconnecting customers who are disconnected due to failure to pay bills, provided the charge is reasonable and is reflected in the utility's tariff on file with the Commission.* <u>Arlington & Glen Falls Water Ass'n</u>, Case No. 95-1234-W-T (Comm'n Order Aug. 7, 1996). The Commission policy is

neither of the relevant Water Rules nor the aforementioned recommended decisions support the PSC's overarching position in regard to the determinative jurisdictional issue: that a disconnect fee is not actually a fee but rather a "practice of charging the fee." Indeed, the recommended decisions and the Water Rules belie the PSC's argument, as there is no mention of a disconnect fee "practice" discussed in either. In short, what is readily gleaned from an examination of the foregoing is that the PSC created its "practice of charging the fee" rubric out of whole cloth in order to justify its exercise of jurisdiction under the auspices of West Virginia Code section 24-2-1(b)(2) & (7) and section 24-2-7(a). *See supra* notes 1 & 2.

The PSC's assertion of jurisdiction – which is, essentially, an argument that its general grant of jurisdictional authority trumps the specific grant of jurisdictional authority given to LLRs and the District – is untenable under our well-established rules of statutory construction. Ordinarily, where two statutes apply to the same subject matter, the more specific statute prevails over the general statute. "When faced with a choice between

---

> based on reasoning that a utility should be permitted to recover costs associated with disconnecting and reconnecting a delinquent customer directly from the customer incurring the cost in order to directly match the cost causer to the cost, rather than spreading the cost throughout the entire customer base.

No. 08-1831-PSD-W-PC-T, at p. 2 (emphasis added). However, the existence of any PSC policy disfavoring the assessment of a disconnect fee is of no moment to the determinative issue in this case, which is that the PSC lacks jurisdiction over LLR's in regard to the establishment of rates and fees. *See* W. Va. Code § 16-13A-9(a)(1)(E).

9

two statutes, one of which is couched in general terms and the other of which specifically speaks to the matter at hand, *preference generally is accorded to the specific statute*." *Newark Ins. Co. v. Brown*, 218 W. Va. 346, 351, 624 S.E.2d 783, 788 (2005) (emphasis added). We previously have held that "[t]he general rule of statutory construction *requires that a specific statute be given precedence* over a general statute relating to the same subject matter where the two cannot be reconciled." Syl. Pt. 1, *UMWA by Trumka v. Kingdon*, 174 W. Va. 330, 325 S.E.2d 120 (1984) (emphasis added). Accordingly, between the general authority of the Commission to investigate unreasonable acts or practices by a utility, § 24-2-7, and the specific delegation of authority to LLRs and locally elected county commissions to enact rates, fees and charges, § 24-1-1 (j) and § 16-13A-9(a), the specific grant of authority prevails.

To hold otherwise, as the majority has done in this case, invalidates the District's statutory jurisdiction to impose a disconnect fee based solely on the PSC's use of semantics. The majority's decision to uphold the PSC's exercise of jurisdiction over the disconnect fees herein effectively transfers jurisdiction over any "rates, fees, and charges" established by an LLR for the services and facilities it furnishes, *see* W. Va. Code § 16-13A-9(a)(1)(E), back to the PSC. Stated otherwise, anytime the PSC decides it wants to exercise jurisdiction in a case, all it has to do in order to circumvent the Legislature's transfer of jurisdiction to LLRs is to designate the fees as "measurements, practices, acts,

10

or services." *See id*. § 24-2-1(b)(2) & (7). This clearly was not what the Legislature intended.

Based upon the foregoing, I respectfully dissent. I am authorized to state that Chief Justice Hutchison joins in this dissenting opinion.